Peelle, J.,
delivered the opinion of the court:
The claimant by his action seeks to recover the difference between the pay of a lieutenant and a lieutenant-commander in the United States Navy from August 10 to December 13, 1898, during which period the claimant was paid as a lieutenant-commander; but two jmars later the difference between the pajr of that grade and that of a lieutenant in the Navjr was deducted in the settlement of his account, on the ground that at the time of his appointment as a lieutenantrcommander, during a recess of the Senate, there was no vacancjr to which he could be appointed.
The facts are that on August 10, 1898, the claimant was a lieutenant in the United States Navy, and on that date, the Senate being in recess, the President sought to advance Commodore Schley to be a rear-admiral from August'10,1898, under the provisions of Revised Statutes, section 1506, as amended *133 by the act of June 17,1878 (20 Stat. L., 144), and section 1507, for “ eminent and conspicuous conduct in battle; ” and supposing- a vacancy was thereby caused in the grade of commodore, the President advanced and promoted Capt. Francis J. Hig-ginson to the grade of commodore. To the supposed vacancy caused by the promotion of Captain Higginson, the President advanced and promoted Commander Charles H. Davis to the grade of captain; to the supposed vacancy caused by the promotion of Commander Davis, the President advanced and promoted Lieut. Commander William H. Reeder to that grade, and to the supposed vacancy thus caused by the promotion of Lieutenant-Commander Reeder, the President advanced and promoted Lieut. Robert G. Peck, the claimant herein, to the grade of lieutenant-commander. But the subsequent promotions to fill the grades caused by the supposed vacancies need not be further dwelt upon here. The officers so advanced and promoted were recognized by the Department as of the rank to which they were severally advanced and promoted from August 10, 1898.
When the Congress convened pursuant to law in December, 1898, Commodore Schley was nominated to the Senate to be a rear-admiral, under the provisions of the Revised Statutes cited, to take effect from August 10, 1898, and in consequence of his advancement to the grade of rear-admiral, all the other officers so appointed in succession “during the recess of the Senate ” were nominated to the supposed vacancy caused by his advancement. The nomination of Commodore Sehlejq however, was not acted upon, while all the others so nominated were confirmed on December 14,1898, among whom was the claimant herein, “to be a lieutenant-commander in the Navy from August 10,1898, vice Lieut. Commander William H. Reeder, promoted.” The claimant was accordingly appointed by the President to that grade to take rank from the date named.
Thereafter, on March 3, 1899, Commodore Schley, having-been again nominated to be a rear-admiral, was confirmed as such under the provisions of the act of that date known as the .navy personnel act (abolishing the grade of commodore and increasing the number of rear-admirals) and took rank from that date and not from the date of said recess appointment.
*134 At the time of the advancement of Commodore Schley, during- the- recess of the Senate, there was no vacancjr to which he could be appointed unless the same existed or arose under the sections of the statute cited, which, as amended, read:
“Sec. 1506. Any officer of the Navy may, by and with the advice and consent of the Senate, be advanced, not exceeding-thirty numbers in rank, for eminent and conspicuous conduct in battle or extraordinary heroism; and the rank of officers shall not be changed except in accordance with the provisions of existing law, and by and with the advice and consent of the Senate.
“Sec. 1507. Any officer who is nominated to a high ex-grade by the provisions of the preceding section shall be promoted, notwithstanding the number of said grade may be full; but no further promotions shall take place in that gi-ade, except for like cause, until the number is reduced -to tíiat provided by law. ”
The claimant’s contention is that those sections of the statute create, in certain contingencies, additional offices which the President in the exercise of his constitutional power may fill “during the recess of the Senate” by the advancement of any officer of the Navy, “not exceeding thirty numbers in rank, for eminent and conspicuous conduct in battle or extraordi-naiy heroism.”
The defendant’s contention is that such advancement can only be made by the President “by and with the advice and consent of the Senate,” and that consequently no vacancy existed “during the recess of the Senate” which could be filled by the Pi-esident in the exercise of his constitutional power.
The first question presented, therefore,-is: Was there a vacancy which could be filled by the President by commission “ during the recess of the Senate? ”
It is the constitutional right of the President, as the chief executive officer of the Government, “to fill up all vacancies that may happen during the recess of the Senate, by granting commissions which shall expire at the end of their next session.” (Constitution, Art. II, sec. 2.) That right can not bo abridged by the Congress, and hence sections 1506 and 1507 must be construed, if that can be done, in consonance therewith.
*135 It is conceded by the claimant that there was no .vacancy to which the claimant could be appointed “ during the recess of the Senate,” unless the act of the President in advancing Commodore Schley under the provisions of the statutes cited operated to create one in the grade of rear-admiral. That is to say, unless by the act of the President in so advancing Commodore Schley, the office to which he was so advanced was thereby contemporaneously created, and the office of commodore vacated. If this be the correct view, then, whenever the President decides to advance an officer of the Navy during the recess of the Senate “for eminent and conspicuous conduct in battle or extraordinary heroism,” under those section's such act on behalf of the President will operate to create the office which, by the same act, he fills by granting a commission which shall expire at the end of the next session of the Congress.
Would that be the exercise of power conferred by the Constitution in respect to filling “vacancies that may happen during the recess of the Senate?” ■ We think not; and this was the view of the Attorney-General respecting the status of an officer of the Navy who had been similarly advanced to a supposed vacancy caused by the advancement of Commodore Sampson, where he said:
“But this does not confer upon the President the power to create such vacancies. ' Such power as he has to create a vacancy, by the removal of an incumbent, is derived from his general power of removal, incident to his power to appoint, or from acts of Congress. And, I have no doubt that, except as restricted by the Constitution or act of Congress, the President has ample power of removal, as incident to his power to appoint officers.” (Ex parte Hennen, 13 Peters, 259; McElrath v. United States, 102 U. S., 426, and Blake v. United States, 113 U. S., 227.)
“That he may remove an officer by the mere appointment of another officer in his place is settled by the two cases last cited. Yet, thq exercise of this power may be regulated or restricted by the Constitution, and, so far at least as this case is concerned, by Congress. And this has been done here by both — by the Constitution, which requires the consent of the Senate to the appointment, the only thing which, in this case, could operate as a removal from office or to create a vacancy, *136 and by the statute, which forbids such a change .of rank by the President alone, as would be this advancement of these officers.” (23 Op. A. G., 30.)
The language of the Constitution “to fill up all vacancies that may happen during the recess of the Senate ” necessarily implies, not only the previous existence of an office, but that “ during the recess of the Senate ” a vacancy happened therein which could be filled by the President by commission to expire at the end of the next session of the Congress.
Furthermore, the latter clause of section 1506 provides in express terms that “ the rank of officers shall not be changed except'in accordance with the provisions of existing law and by and with the advice and consent of the Senate.” That the advancement of naval officers under section 1506 was intended to be only with the advice and consent of the Senate is made more clear by section 1507, wherein it is provided that “any officer who is nominated to a higher grade, by the provisions of the preceding section, shall be promoted, notwithstanding the number of said grade ■may be full.”
When, therefore, we consider both sections, we note that the advancement of naval officers “for eminent and conspicuous conduct in battle” can only be made by the President “ by and with the advice and consent of the Senate.” If we are correct in this, it follows that confirmation by the Senate will not operate retro active^ so as to validate an unauthorized act.
At the time of the recess appointment, the number of rear-admirals authorized by Revised Statutes, section 1363, was full, and as Commodore Schley could only be advanced by the President, as additional to that grade under section 1506, “by and with the advice and consent of the Senate,” there was no office then in existence to which he could be so advanced; and there being no office, the rule invoked applicable to defacto officers does not apply. This is not a case where the title to the office was defective, as in the case of County of Ralls v. Douglass (105 U. S., 728), and cases in this court cited by the claimant, but it is a case where there was no office, but merely a statute authorizing the creation of an office by the President, by and with the advice and consent of the *137 Senate,- in certain contingencies; and until those contingencies arose, and the joint act of the President and the Senate took place, there was no office, and the case therefore comes within the ruling in the case of Norton v. Shelby County (118 U. S., 425, 441), in this, that unless there existed at the time an office dejure there could be no incumbent defacto.
It will therefore be observed that the difficulty in advancing Commodore Schley under sections 1506 and 1507 during the recess of the Senate was not merely for want of a vacancy in the grade of rear-admiral, but was for the want of an office as well. Hence, at that time he could not be advanced and promoted to be a rear-admiral either de jure or de facto; and that being so, no vacancy was thereby caused in the grade of commodore, without which no vacancies were created by the promotion of those named from the lower grades. In other words, appointments to the grades below that of commodore all depended upon a vacancy in the grade of commodore, and for that reason the promotion of Captain Higginson to the supposed vacancy in the grade of commodore, as well as those to the lower grades, was without constitutional sanction. And as the number of officers authorized by section 1363 in the several grades below that of rear-admiral was also full, the claimant can not be held to have been a defacto officer in the grade of lieutenant-commander while that grade was, at the same time, filléd by an officer de jure, even though he be addressed and recognized by the Department as a lieutenant-commander.
For the reasons we have given we must hold that the ruling of the accounting officers, following the opinion of the Attorney-General, was correct, and the petition is therefore dismissed.