August 3, 1979

## 79-57 MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### Constitutional Law—Article II, Section 2, Clause 3—Recess Appointments—Compensation (5 U.S.C. § 5503)

We are responding to your inquiry whether the President can make appointments under Article II, Section 2, Clause 3 of the Constitution[1] during the forthcoming recess of the Senate, that is expected to last from about August 2 until September 4, 1979. It is our opinion that the President has this power.

A preliminary question is whether the President's authority to make appointments under this clause, commonly called "recess appointments," applies to all vacancies that exist during a recess of the Senate or whether it is limited to those vacancies that arise during the recess. A long line of opinions of the Attorneys General, going back to 1823 (*see* 41 Op. Att'y Gen. 463, 465 (1960) ), and which have been judicially approved (*see, Allocco* v. *United States,* 305 F.(2d) 704 (2d Cir. 1962) ), has firmly established that the words "may happen" is to be read as meaning, "may happen to exist during the recess of the Senate," rather than as, "may happen to occur during the recess of the Senate." The President's power to make recess appointments thus is not limited to those vacancies that occurred after the Senate went into recess, but extends to all vacancies existing during the recess regardless of the time when they arose. It should be noted, however, that where a vacancy existed while the senate was in session, the recipient of the recess appointment may be paid for his services only if the conditions of 5 U.S.C. § 5503 have been met. We discuss this matter in more detail later in this opinion.

---

[1] Article II, § 2, cl. 3, provides:
   The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session.

The question whether an intrasession recess of the Senate constitutes a recess within the meaning of Article II, Section 2, Clause 3, of the Constitution has a checkered background. Attorney General Knox ruled in 1901 that an adjournment of the Senate during the Christmas holidays, lasting from December 19, 1901, to January 6, 1902, was not a recess during which the President could make recess appointments. 23 Op. Att'y. Gen. 599 (1901). That interpretation was overruled in 1921 by Attorney General Daugherty, who held that the President had the power to make appointments during a recess of the Senate lasting from August 24 to September 21, 1921. 33 Op. Att'y. Gen. 20 (1921). The opinion concluded that there was no valid distinction between a recess and an adjournment, and it applied the definition of a recess as described by the Senate Judiciary Committee in its report of March 2, 1905:

> the period of time when the senate is *not sitting in regular or extraordinary session as a branch of the Congress, or in extraordinary session for the discharge of executive functions;* when its members owe no duty of attendance; when its Chamber is empty; when, because of its absence, it can not receive communications from the President or participate as a body in making appointments * * * . [S. Rept. 4389, 58th Cong., 3d sess., 1905; 39 CONGRESSIONAL RECORD 3823. [(Emphasis added.)]

The Attorney General, however, closed with the warning that the term "recess" had to be given a practical construction. Hence, he suggested that no one "would for a moment contend that the Senate is not in session" in the event of an adjournment lasting only 2 days, and he did not believe that an adjournment for 5 or even 10 days constituted the recess intended by the Constitution. He admitted that by "the very nature of things the line of demarcation cannot be accurately drawn." He believed, nevertheless, that:

> the President is necessarily vested with a large, although not unlimited, discretion to determine when there is a real and genuine recess making it impossible for him to receive the advice and consent of the Senate. Every presumption is to be indulged in favor the validity of whatever action he may take. But there is a point, necessarily hard of definition, where palpable abuse of discretion might subject his appointment to review.

This opinion was cited and quoted with approval by the Comptroller General in 28 Comp. Gen. 30, 34 (1948), and reaffirmed by Acting Attorney General Walsh in. 1960 in connection with an intrasession summer recess lasting from July 3, 1960, to August 15, 1960. 41 Op. Att'y Gen. 463 (1960). Presidents frequently have made recess appointments during intrasession recesses lasting for about a month.

In the winter of 1970 the Senate recessed from December 22 to December 28, 1970, and the House adjourned from December 22 to December 29, 1970. When the Office was informally approached about possible appointments during that recess, we advised against their making

in the light of the warning in Attorney General Daughtery's opinion. In connection with the Pocket Veto Clause of the Constitution, Article I, Section 7, Clause 2, the President, however, decided without awaiting our advice that the 6-day adjournment of the Senate constituted an adjournment which prevented the return of a Senate bill; hence, that he could pocket veto S. 3418, The Family Practice of Medicine Act. Senator Kennedy, who had voted in favor of the bill, thereupon sought a declaratory judgment that the bill had become law without the signature of the President because the President had failed to return the bill within the 10-day period provided for in Article I, Section 7, Clause 2, and that the 6-day intrasession adjournment did not prevent the return of the bill. The D.C. Circuit Court of Appeals held that the bill had become law. That decision was based on the considerations that the 6-day adjournment had not prevented the return of the bill on account of its short duration, and that it was an intrasession adjournment and "appropriate arrangements * * * for receipt of presidential messages" had been made. *Kennedy* v. *Sampson,* 511 F.(2d) 430, 442 (C.A.D.C. 1974). The decision rests on an extrapolation of *Wright* v. *United States*, 302 U.S. 583 (1938), but is inconsistent with important passages in the *Pocket Veto Case,* 279 U.S. 655, 683–687 (1929), which considered such "appropriate arrangements for the receipt of Presidential messages" to be ineffective. The executive branch did not, however, seek Supreme Court review of *Kennedy*.

As the result of *Kennedy* v. *Sampson*, President Ford indicated that he would not invoke the pocket veto power during an intrasession recess. Moreover, in view of the functional affinity between the pocket veto and recess appointment powers, Presidents during recent years have been hesitant to make recess appointments during intrasession recesses of the Senate.

We have carefully reexamined the pertinent opinions of the Attorneys General and have concluded that we should follow the opinions of Attorney General Daugherty and Acting Attorney General Walsh, which hold that the President is authorized to make recess appointments during a summer recess of the Senate of a month's duration. The decision in *Kennedy* does not require a departure from those rulings. While the Pocket Veto and Recess Appointment Clauses deal with similar situations, namely, the President's powers while Congress is not in session, they, nevertheless, are not identical. The Pocket Veto Clause deals with an adjournment of the Congress that prevents the return of a bill, the Recess Appointment Clause with a recess of the Senate. If the Founding Fathers had wanted the two clauses to cover the same situation, it is reasonable to assume that they would have selected identical language for both. *See, Holmes* v. *Jennison,* 14 Pet. 540, 570–571 (1840). Moreover, the effect of a pocket veto and of a recess appointment is different. A pocket veto is final. It kills the legislation absolutely and it can be revived only by resuming the legislative process from the beginning. A recess appointment, on the other hand, results only in the temporary filling of an office, and, as a practical matter,

Congress can force the recess appointee to resign by rejecting his nomination. Pursuant to an annual appropriation rider, a rejection has the effect of cutting off his compensation.[2] Finally, since, as pointed out above, *Kennedy* v. *Sampson* is in conflict with an important aspect of the decision of the Supreme Court in the *Pocket Veto Case, supra,* we do not consider it the last word on the question whether the President may exercise his pocket veto power during an intrasession adjournment of a month's duration.

Should the President decide to exercise his recess appointment power during the forthcoming recess of the Senate, the following technical points should be considered.

A.   If the vacancy existed while the Senate was in session, the recess appointee can be compensated pursuant to 5 U.S.C. § 5503, only if: the vacancy arose within 30 days of the end of the session of the Senate, or, if a nomination for the office was pending before the Senate at the end of the session, or if a nomination for the office was rejected by the Senate within 30 days before the end of the session. In addition, a nomination to fill the vacancy referred to above must be submitted to the Senate not later than 40 days after the beginning of the next session of the Senate. No nomination need be submitted where the vacancy occurred during the recess of the Senate.

B.   A recess appointment presupposes the existence of a vacancy. If there is an incumbent in office the recess appointment in itself does not effect a removal of the incumbent so as to create a vacancy. *See, Peck* v. *United States,* 39 Ct. Cl. 125 (1904); 23 Op. Atty Gen. 30, 34–35 (1900). Before the President can exercise his recess appointment power in such a case he must exercise his constitutional removal power to the extent it is available, or, if not available, the incumbent must resign.

LARRY A. HAMMOND
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[2]For the last pertinent statute, *see* Treasury, Postal Service and General Government Appropriations Act, 1979, § 604 92 Stat. 1015.